IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH COLEMAN | |
| Plaintiff, | Case No. 22-CV-00016 |
| v. | |
| SOO LINE RAILROAD D/B/A CANADIAN PACIFIC RAILWAY | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Keith Coleman claims that his employer Soo Line Railroad d/b/a Canadian Pacific Railway racially discriminated and retaliated against him in violation Title VII of the Civil Rights Act of 1964 and Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-17, when it removed him from his job as a locomotive engineer and then terminated him. [1]. Defendant now moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). [17]. For the reasons explained below, the Court denies Defendant's motion [17].

**I.  Background[1]**

For nearly twenty-three years, Plaintiff Keith Coleman, an African American, worked for Defendant Soo Line Railroad d/b/a Canadian Pacific Railway as a locomotive engineer. [1] ¶¶ 1, 9–11. In 2008, Plaintiff filed a lawsuit against Defendant alleging harassment on account of his race. *Id.* ¶¶ 11, 22. Then, in March

---

[1] The Court draws these facts from Plaintiff's Complaint, [1].

1

2017, he was deposed in a federal employment case[2] against Defendant where he testified "relating to discrimination and retaliation by" the Defendant. *Id.* ¶ 12.

Plaintiff alleges that following his deposition and continuing through 2019, he started facing "unjustified discipline." *Id.* ¶¶ 13–14. On April 22, 2019, Plaintiff sent a letter to Defendant's President and CEO, Keith Creel, complaining about this "unfair treatment" and that he believed that a road foreman named Doug Carl was "conspiring to terminate" him. *Id.* ¶ 15. Then in May 2019, Plaintiff reported to Amanda Cobb from Defendant's human resources department and to Defendant's superintendent, Joshua Bahruth, that he believed Defendant "was discriminating against him based on his race." *Id.* ¶ 16.

According to Plaintiff, Defendant failed to take any action in response to his complaints to CEO Creel, Amanda Cobb or Joshua Bahruth. *Id.* ¶ 27. Instead, he alleges, Defendant "removed" him "from service" (*i.e.*, took him off the job) on October 9, 2019, and then terminated his employment on October 19, 2019. *Id.* ¶¶ 17–19. On January 14, 2021—presumably after Plaintiff appealed his termination—the Public Law Board No. 7786 reinstated Plaintiff's employment but did not award him back pay or lost benefits. *Id.* ¶ 20.

After filing complaints with the Illinois Department of Human Rights and EEOC and receiving right to sue letters, *id.* ¶ 4, Plaintiff filed this lawsuit, [1]. In it, he alleges that Defendant engaged in race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 164 and Civil Rights Act of 1991, 42 U.S.C. §§

---

[2] The Complaint does not specify who brought the federal employment case.

2

2000e-17, when it removed him from service on October 9 (Counts I & III) and then terminated him on October 19 (Counts II & IV). [1].

Now, Defendant moves to dismiss pursuant to Rule 12(b)(1) and 12(b)6), [17]. As to Rule 12(b)(1), it argues that the Court lacks subject-matter jurisdiction over Plaintiff's claims because the Railway Labor Act ("RLA") precludes them and makes them subject to mandatory arbitration. [17-1] at 6–11. In the alternative, it moves to dismiss Plaintiff's retaliation claims pursuant to Rule 12(b)(6) and asks the Court to dismiss "any claims seeking to challenge disciplinary actions other than the October 2019 removal and termination." *Id.* at [17-1] at 11–15.

## II. Legal Standards

On a Rule 12(b)(1) motion, a movant may assert either facial or factual challenges to a court's subject-matter jurisdiction. *See Apex Digital, Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Facial challenges require a court to "look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction" whereas factual challenges refute the existence of jurisdiction notwithstanding a complaint's allegations. *Id.* at 443–44. For factual challenges, a court may look beyond a complaint's allegations and, if a defendant presents evidence that calls into question a court's jurisdiction, then the "presumption of correctness that we accord to a complaint's allegations falls away," and plaintiff bears the burden to present evidence that a court has subject-matter jurisdiction. *Id.* (quoting *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998)).

3

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). To be facially plausible, the complaint must include enough factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In evaluating the sufficiency of a complaint, a court accepts as true all well-pled factual allegations in the complaint and draws all inferences in the plaintiff's favor. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

## III. Analysis

### A. RLA Preclusion

The Court first considers Defendant's argument that the RLA divests this Court of subject-matter jurisdiction over Plaintiff's claims.[3] Congress passed the RLA out of a concern that a labor conflict could bring the "nation's transportation network" to a "standstill." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac R.R. Co.*, 879 F.3d 754, 755 (7th Cir. 2017). The RLA provides that railroads and their employees must resolve all "minor" disputes through arbitration rather than in the courts. *See Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). A "minor" dispute grows "out of grievances or out of the interpretation or application of agreements

---

[3] In *Carlson v. CS Transportation, Inc.*, the Seventh Circuit in *dicta* pondered whether RLA preclusion implicates a court's subject-matter jurisdiction, or merely dooms a case on the merits. 758 F.3d 819, 831 (7th Cir. 2014). The *Carlson* court declined to resolve the issue, however, and did not overrule its prior precedent like *Monroe v. Missouri Pacific Railroad Co.*, 115 F.3d 514, 516 (7th Cir. 1997) that examined RLA preclusion and preemption (the term used for state-law claims) as an issue implicating subject-matter jurisdiction. Further, the distinction has no practical effect here since, as discussed below, Plaintiff's claims, as alleged, are not RLA-precluded.

4

concerning rates of pay, rules, or working conditions." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014) (quoting 45 U.S.C. § 153(i)). If a claim can be "conclusively resolved" by interpreting an employment contract such as a collective bargaining agreement ("CBA"), then it likely constitutes a "minor dispute." *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001). Further, even if a claim does not arise under a CBA, the RLA may still preclude it if its "resolution depends on the disputed meaning of or requires interpretation of contract terms." *Rabe*, 636 F.3d at 872. In general, however, the RLA does not preclude "claims asserting rights established by state or federal law independent of a collective bargaining agreement." *Carlson*, 758 F.3d at 831.

Here, Defendant argues that a CBA governed Plaintiff's employment and controlled when and how he may be removed from his job and terminated. [17-1] at 9–11. Defendant further argues that it removed Plaintiff from his job for allegedly mishandling a train and then terminated him after it investigated and determined that Plaintiff "violated important operation safety rules" that "rendered him unqualified to continue his employment as an engineer." [171-1] at 1.[4] Thus, it insists, to determine whether it legitimately terminated Plaintiff or did so for discriminatory and retaliatory reasons, a court would need to interpret the CBA and, therefore, the RLA precludes Plaintiff's claims.

---

[4] In support, Defendant provides copies of the governing CBA, the letters it sent Plaintiff about his removal and termination, the transcript of an investigative hearing that occurred prior to his termination, and the Public Law Board written decision on reinstatement. *See* [17-2]–[17-11].

5

The Seventh Circuit's decision in *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 831 (7th Cir. 2014) proves decisive here. In *Carlson*, a railroad employee alleged that her employer discriminated and retaliated against her in violation of Title VII when it refused to reinstate her to a prior position. *Id*. The employer argued that the RLA precluded such claims because the court would have to interpret the CBA to determine if the employer had the right to refuse reinstatement. *Id*. The Seventh Circuit disagreed. It emphasized that a "claim is not barred simply because 'the action challenged by the plaintiff is arguably justified by the terms of the CBA.'" *Id*. at 832. It held that the plaintiff's claims involved only a "'factual inquiry into any retaliatory [or discriminatory] motive of the employer' rather than an interpretation of the [CBA]." *Id*. (alteration in original) (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 266 (1994)). It continued: "Even if Carlson did not have the qualification specified in the collective bargaining agreement, she would still have viable Title VII claims if, as she alleges, the same potentially disqualifying attributes have been overlooked for men or for others who have not complained about discrimination." *Id*. at 833.

Here, as in *Carlson*, the claims do not arise from the governing CBA but from Title VII. And, as in *Carlson*, regardless of whether Defendant could remove or terminate Plaintiff under the CBA, Plaintiff may still succeed on his Title VII claims if he can establish that Defendant "applied the CBA in a discriminatory or retaliatory manner." *Johnson v. Soo Line RR. Co.*, No. 17-cv-7828, 2022 WL 540758, at *7 (N.D. Ill. Feb. 23, 2022) (discussing *Carlson*, 758 F.3d at 831 and finding on summary

judgment that the RLA did not preclude a plaintiff's claims of discriminatory and retaliatory discharge from his railroad job).

That is what Plaintiff's Complaint alleges. Namely, he alleges that Defendant had discriminatory and retaliatory motives for removing and terminating him and that similarly situated employees outside his alleged protected class were not subject to the same adverse consequences. [1] ¶¶ 21–29, 35–40, 45–51, 59–63. Thus, *Carlson* teaches that the RLA does not preclude Plaintiff's claims.

In arguing to the contrary, Defendant attempts to analogize this case to other Seventh Circuit cases that found RLA preclusion or preemption. [17-1] at 6–11 (discussing *Brown v. Ill. Central. R.R. Co.*, 254 F.3d 654 (7th Cir. 2001), *Bielicke v. Terminal R.R. Ass'n*, 30 F.3d 877 (7th Cir. 1994), and *Monroe v. Mo. Pac. R. Co.*, 115 F.3d 514, 516 (7th Cir. 1997)). But these cases prove inapposite.

First, in *Brown v. Illinois Central Railroad Co*, a plaintiff claimed that his employer refused to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"). 254 F.3d at 654. The Seventh Circuit found the RLA precluded such a claim because it would require the court to examine the governing CBA to determine if the plaintiff's disability disqualified him from his current job and, if so, whether the employer would "violate the seniority system established by the CBA" if it offered a modified job to plaintiff but not others more senior to him. *Id.* at 661. The court emphasized that the CBA might prove dispositive of the plaintiff's claims because "the ADA does not require disabled individuals to be accommodated

7

by sacrificing the collectively bargained, bona fide seniority rights of other employees." *Id.*

Here, however, Defendant fails to explain how the CBA could prove dispositive of Plaintiff's claims. To the contrary, even if Defendant intends to defend against Plaintiff's claims by arguing that the CBA sanctioned its actions toward Plaintiff, the *Carlson* court made clear that an "employer cannot ensure the preclusion of a plaintiff's claims merely by asserting certain CBA-based defenses to what is essentially a non-CBA-based claim." 758 F.3d at 833 (quoting *Hawaiian Airlines*, 512 U.S. at 266)). Thus, Defendant has not shown that the reason for finding RLA preclusion in *Brown* suggests RLA preclusion here.

Second, Defendants cite to *Bielicke v. Terminal Railroad Association* and *Monroe v. Missouri Pacific Railroad.* [17-1] at 6–11. In *Bielicke,* a railroad employee claimed that his employer conducted illegitimate investigations against him to deter him from filing Federal Employee Liability Act ("FELA") claims for on-the-job injuries. 30 F.3d at 877. The court found that the RLA precluded these claims because they turned on the legitimacy of the investigations and the CBA controlled when and how an employer could initiate an employee investigation. *Id.* at 877–78.

Similarly, in *Monroe*—a case that the Seventh Circuit called "strikingly similar" to *Bielicke*—a railroad employee alleged that its employer terminated him to interfere with his potential FELA personal injury claims. 115 F.3d at 517. While the *Monroe* plaintiff alleged that his termination violated FELA, his complaint also attacked the "propriety of the disciplinary hearing" that led to his termination and

8

"the sufficiency of the evidence proffered at the hearing." *Id*. at 518. He also affirmatively argued that his claim "must be analyzed under the CBA and the RLA." *Id*. Based on this, the Seventh Circuit held that the "factual particularities of" Plaintiff's complaint will "require an interpretation of the CBA." *Id*. at 519. The court continued that it "cannot allow" the plaintiff to "'artfully plead' himself around the preemptive effect of the RLA by framing his CBA claims as wrongful discharge causes of action under the FELA." *Id*.

Unlike the plaintiffs in *Bielicke* and *Monroe*, however, Plaintiff does not allege that Defendant failed to follow CBA-required procedures or did not have the authority under the CBA to investigate, remove him from his job, or terminate him. [1]; *see also* [19] at 4 (confirming in his response that his claim does not rely on "any investigative procedures or other procedures found in the CBA."). Instead, as Plaintiff argues, his claims as alleged involve a factual inquiry into whether Defendant violated Title VII by removing and terminating Plaintiff "*because* Plaintiff is black and *because* Plaintiff participated in protected activity." [19] at 4. Thus, based upon Plaintiff's claims as alleged, *Bielicke* and *Monroe* remain distinguishable.

Finally, Defendant argues for the first time in reply that this case is different from *Carlson* because the CBA here includes an anti-discrimination provision, whereas the *Carlson* CBA did not. [20] at 2 (pointing to the CBA provision that states it must be "applied in a non-discriminatory manner without regard to . . . race." (internal citations omitted)). *Carlson* itself dispelled of this argument, however, where it stated that "if a collective bargaining agreement simply prohibits employers

9

from doing something (for example discriminating on a certain basis)," then "a claim under an independent law covering the same subject matter is not precluded." 758 F.3d at 833 (citing *Felt v. Atchinson, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416, 1419 (9th Cir. 1995) (finding no RLA preclusion of Title VII religious discrimination claim even though the CBA "provides for arbitration of claims of religious discrimination) and *Hawaiian Airlines*, 512 U.S. at 262–63 (explaining that a wrongful discharge claim under state law was not RLA-preempted even if it depends on the same facts as a wrongful discharge claim under the CBA)). Defendant cannot avoid being hailed into federal court for alleged race discrimination and retaliation in violation of Title VII just because the CBA has a provision that generally prohibits race discrimination.

In short, Plaintiff's claims as pled derive from Title VII rather than from any rights he had under the CBA and they turn on a "factual inquiry" into Defendant's motives for its adverse actions. They are not RLA-precluded.

### B. Plaintiff's Retaliation Claims

Next, Defendant argues that Plaintiff fails to allege viable retaliation claims because his alleged protected activities in 2008 (when he filed a discrimination lawsuit) and 2017 (when he was deposed about Defendant's alleged discriminatory conduct) remain "too attenuated in time to support a causal connection" to his removal and termination in 2019. [17-1] at 12.

To plead retaliation in violation of Title VII, Plaintiff must allege that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there exists a causal link between the two. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559,

10

564 (7th Cir. 2015). As to the causal connection, a plaintiff must establish that the protected activity was the "but-for" cause of the protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

As Defendant notes, [17-1] at 12, courts sometimes dismiss a Title VII retaliation claim at the pleading stage for failure to allege a causal link if the allegations are "so bare-bones that a lengthy period between the protected activity and the alleged retaliation will make any causal connection between the two implausible," *Carlson*, 758 F.3d at 828–29; *see also Carmody v. Bd. of Trustees of Univ. of Ill.*, 747 F.3d 470, 480 (7th Cir. 2014) (affirming dismissal of retaliation claims where protected activity came three years before adverse action).

This is not such a case. Here, the Complaint does more than just allege that Defendant removed and terminated Plaintiff in 2019 after he filed a lawsuit in 2008 and sat for a deposition in 2017. Instead, Plaintiff alleges that after he sat for a deposition in 2017 and testified about Defendant's alleged discrimination and retaliation, Defendant began treating him unfairly and subjecting him to "unjustified discipline." [1] ¶¶ 13–15. He claims this "unjustified discipline" continued through 2019, at which point he complained on April 22, 2019 to Defendant's CEO and then on May 2019 he reported to Amanda Cobb in HR and Superintendent Bahruth that Defendant "was discriminating against him based on his race." *Id.* ¶¶ 14–16. He further alleges that, rather than investigate these 2019 complaints, Defendant instead removed him from service and terminated him. *Id.* ¶¶ 26–29; 38–41, 47–52, 62–64.

11

As Plaintiff correctly notes in response, his April 2019 email to CEO Creel and May 2019 report to HR and Bahruth may also constitute protected activity. [19] at 6; *see also Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011) (holding that informal or verbal complaints may qualify as protected activity). And the Complaint alleges that these alleged 2019 protected activities precipitated Defendant's adverse actions in October 2019. Thus, contrary to Defendant's insistence, there is not a multi-year gap between alleged protected activity and Defendant's adverse action.

As to the 2019 internal complaints, Defendant's opening memorandum only addresses the April 2019 email to CEO Creel. [17-1] at 13. Defendant argues that it does not qualify as protected activity as a matter of law because the email "contains no allegation or statement whatsoever to discrimination, retaliation or race as a protected class." [17-1] at 13. In support, Defendant attaches the email, arguing that the Court may consider it on a motion to dismiss because the Complaint directly references it. *Id.*; *see also* [17-2].

As Defendant correctly notes, vague complaints "without indicating a connection to a protected class or providing facts sufficient to create that inference" may not suffice to constitute protected activity. *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016 (quoting *Orton-Bell v. Ind.*, 759 F.3d 768, 776 (7th Cir. 2014)). Yet, even if the Court considered the substance of Plaintiff's email to CEO Creel at this stage and even if the email did not plausibly qualify as protected activity, that still leaves the alleged May 2019 report to HR and Superintendent

12

Bahruth. Defendant's opening memo ignores the alleged May 2019 report. And, on reply, Defendant merely insists, without explanation, that this allegation "fails to withstand scrutiny." [20] at 9. Such an undeveloped argument, first made on reply, fails on a motion to dismiss, and is best left for discovery, summary judgment or trial.

In sum, even if the April 2019 email does not constitute protected activity, the Complaint sufficiently alleges a causal link based on Plaintiff's May 2019 report to HR and Bahruth to make out plausible retaliation claims.

### C. Disciplinary Actions other than Removal and Termination

Finally, Defendant argues that the Court should dismiss "any claims seeking to challenge disciplinary actions other than the October 2019 removal and dismissal" because such claims would fail for lack of exhaustion and are time-barred. [17-1] at 14. Plaintiff responds that he has not alleged claims based on discipline other than his October 2019 removal and termination and Defendant's request improperly asks the Court to render an order about theoretical claims. [19] at 6–7. He further complains that Defendant seeks this order so it can "use that language to attempt to prejudicially narrow discovery" into Plaintiff's "disciplinary record." *Id.* In reply, Defendant points to the Complaint's allegation that Defendant subjected Plaintiff to "unjustified discipline" after his 2017 deposition and reiterates its request that the Court dismiss any "attempt by Plaintiff to belatedly challenge any disciplinary actions" besides the October 2019 removal and termination. [20] at 11.

The Court will not speculate about why Defendant made such a request. But the Court agrees with Plaintiff that the request asks this Court to dismiss claims that

13

Plaintiff has not alleged. Although Plaintiff's Complaint alleges that he faced "unjustified discipline" following his 2017 deposition and this prompted his April 2019 email to the CEO and May 2019 report to HR and Bahruth, the Complaint only alleges Title VII claims based upon Plaintiff's October 2019 removal and termination. [1]. Since Plaintiff has not brought claims based on other "unjustified discipline," there is nothing for the Court to dismiss. The Court will not issue an advisory opinion about whether possible claims remain viable. Accordingly, the Court denies Defendant's request as moot.

## IV. Conclusion

For the reasons explained above, the Court denies Defendant's motion to dismiss. [17].

Dated: September 26, 2022   Entered:

_____
John Robert Blakey
United States District Judge