# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KEITH COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-00016 |
| | ) | |
| v. | ) | Judge John Robert Blakey |
| | ) | |
| SOO LINE RAILROAD CO. | ) | |
| D/B/A CANADIAN PACIFIC | ) | |
| RAILWAY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Keith Coleman, an African American, worked as a Locomotive Engineer for Defendant Soo Line Railroad, d/b/a Canadian Pacific Railway ("CP"). Defendant terminated Plaintiff, reinstated him, and then terminated Plaintiff again. Plaintiff sued, alleging race discrimination, age discrimination retaliation, and failure to provide a reasonable accommodation. *See* [25]. Defendant now moves for summary judgment on all claims.[1]

For the reasons explained below, this Court grants Defendants' motion for summary judgment [69]

## I. Background

CP originally hired Plaintiff in 1998. [76] ¶ 2. In 2008, Plaintiff filed suit against CP alleging discrimination. [76-1] 109:6–24. In 2017, Plaintiff testified in a deposition in a lawsuit filed by someone else against CP. *Id.*

---

[1] Plaintiff does not oppose Defendant's motion for summary judgment on his age discrimination claim, [75] at 15, and the Court thus grants as unopposed Defendant's motion as to this claim, Count VIII.

On October 24, 2018, Plaintiff allegedly failed to sound a proper whistle signal while acting as the engineer on duty. [71-2] at Ex. H. He signed a waiver[2] in November and received ten demerits. *Id.* In the first four months of 2019, Coleman signed three waivers totaling twenty-five demerits and received a twenty-day suspension, of which he served ten days and deferred the other ten. *Id.* The issues addressed in the waivers included reporting late to work and improper actions on the train. *Id.* As of April 9, 2019, Coleman had accumulated thirty-five demerits in total. *Id.*

On April 11, 2019, Plaintiff was involved in his first break-in-two incident,[3] the result of improper train handling. *Id.*; [76] ¶ 30–31. Later in April, Plaintiff met with Amanda Cobb of CP Human Resources to discuss the break-in-two incident. [76] ¶¶ 22–24. Joshua Bahruth, Superintendent of Operations at Bensenville, joined the meeting late, discussed train handling specifics with Plaintiff, and told him that he could potentially be dismissed because of the incident. *Id.* Plaintiff signed a waiver accepting responsibility. *Id.* Plaintiff believed he would be terminated if he did not sign the waiver. [76-1] 132:12–18.

On April 22, 2019, Plaintiff sent an email to Keith Creel, the CEO of CP, claiming that Assistant Superintendent Branden Billingsley and Road Foreman Doug Carl were conspiring to terminate him. [76] ¶ 28. He claimed that "because of

---

[2] A "waiver" is an agreement between the employee and the company on the discipline the employee will receive for an infraction, avoiding the adjudicatory process of the Collective Bargaining Agreement. *See* [76-11] at 18–19.

[3] A "break-in-two" incident, as the name suggests, describes a situation where a train separates or breaks apart when it is not supposed to do so.

these two managers my career has been a nightmare." *Id.* In his deposition, Plaintiff testified that he was required to take tests as an engineer and claimed that Billingsley falsely recorded him failing tests without telling him. [71-1] 60:11–24.

On October 8, 2019, Coleman was involved in his second break-in-two incident. [76] ¶¶ 30–32. Approximately one mile from the Bensenville Yard, the train went into emergency break application and was temporarily disabled. *Id.* ¶ 30. An inspection revealed a broken drawbar had caused the train to separate, or break in two. *Id.* ¶ 31. Road Foreman Doug Carl reviewed the train downloads[4] and determined that improper train handling caused the break-in-two, though he was not present at the incident. *Id.* ¶ 33; [79] ¶ 10. According to Plaintiff, Doug Carl does not like African Americans, and Plaintiff has experienced Carl's negative demeanor towards African Americans at the yard. [76-1] 162:22–164:13.

On October 9, 2019, Defendant issued Plaintiff a notice of investigation and hearing, notifying him that he was held out of service. [76] ¶ 34. Later in October, Plaintiff met with Assistant Superintendent Josh Pennington and Doug Carl. *Id.* ¶ 35. Carl testified that, during that meeting, Plaintiff alleged that a mechanical failure caused the train to not respond to the throttle. [71-1] at 208. Based upon his review, Carl concluded that Coleman had not performed a Class III air brake continuity test, a federal requirement.[5] [76] ¶ 36. On October 15, Defendant sent

---

[4] Defendant compares these downloads to the "black box" on an airplane that "record voluminous amounts of information, including how the locomotive was handled by the engineer throttle manipulations, motor position, dynamic breaking, and other operating information." [76] ¶ 32.

[5] *See* 49 C.F.R. § 232.211; 49 C.F.R. § 240.307; 49 C.F.R. § 240.117.

Plaintiff a revised hearing notice with the additional charge of failing to conduct the brake test. *Id.* ¶ 38.

The hearing commenced the following day, October 16, 2019. [79] ¶ 3. Coleman participated, but did so under protest. *Id.* ¶ 4. Hearing participants included Plaintiff; Michael Ugorek, the hearing officer and Assistant Superintendent at the Bensenville Terminal; Mathew Peterson, Plaintiff's union representative; and Doug Carl, a witness. [76-2] at 5–6. Roger Olinski, the conductor during the October break-in-two, was not present, though Peterson had requested his presence. *Id.* at 17–21. Carl testified that the break-in-two occurred when the drawbar broke at the 63rd car, and that Plaintiff had followed the Rule in Use of the Throttle. *Id.* at 52. That rule requires the engineer to advance the throttle one notch at a time and only advance the throttle when tractive effort is stable or declining. [71-2] at SOO-Coleman0003735. Carl also testified that he could not determine whether a mechanical failure had occurred, stating, "I'm not a mechanic." [76-2] at 61. Plaintiff testified that he advanced the throttle one notch at a time, that he used good judgment when doing so, and that he had performed the Class III air brake pipe continuity test before departure. *Id.* at 63.

On October 21, 2019, Defendant terminated Plaintiff and revoked his engineer certification. [76] ¶¶ 49, 50. In deciding to fire Plaintiff for cause, Defendant employed a multi-level review, with the final decision being made by Nicholas Walker. *Id.* ¶ 48; [76-11] 29:7–25. The review included a recommendation of dismissal by Ugorek, sent to several other employees before a final decision was

rendered by Walker. [71-3] Exs. R, S, T. CEO Keith Creel also signed off on the decision via email. [76-11] at 38. Plaintiff appealed his termination, [79] ¶ 15, and cross-filed complaints with the Equal Opportunity Employment Commission (EEOC) and the Illinois Department of Human Rights (IDHR). [71-5] at 29. Defendant denied Plaintiff's appeal by letter on January 17, 2020. [76] ¶ 53.

A three-member public law board ("PLB") then heard Plaintiff's appeal. *Id.* ¶ 54. On January 14, 2021, the board found mitigating factors and reinstated Plaintiff, without backpay, on a last-chance basis. *Id.* ¶ 55. In so doing, the PLB held there was sufficient evidence to find that Coleman violated operating instructions, but it also reasoned that "given the mitigating factors that are evident in this record, this Board must find that the Carrier acted unreasonably, arbitrarily, and capriciously when it terminated the Claimant's employment in this case." [76-6] at 3, 4.

Plaintiff returned to work and began re-familiarization trips. [76] ¶ 56. At some point, before returning to work, Plaintiff disclosed to CP that he had diabetes, high blood pressure, and sleep apnea. [79] ¶ 17. Plaintiff submitted an accommodation request form, dated June 10, 2021, requesting the right to take off work for doctor's visits. [71-3] Ex. Y. The form listed sleep apnea as one of his "serious conditions" but did not include any reference to a CPAP machine or overnight trips. *Id.* Disability Management Specialist Lisa Hanson received Plaintiff's submission and requested more information via email on June 14, 2021. *Id.* Ex. Z.

On June 16, 2021, Coleman spent the night in a hotel without his CPAP machine. [79] ¶ 18. He testified that he believed he was going to take a cab home

5

that night, but instead CP assigned him to work a train the following day, June 17. *Id.* ¶¶ 18–19. Soon after the June 17 trip, an independent audit of the inward facing camera in the locomotive revealed apparent footage of Coleman sleeping. *Id.* ¶ 21. On June 24, 2021, Plaintiff received a notice of investigation letter and was removed from service based upon the audit. *Id.* ¶ 23.

Coleman attended a disciplinary hearing on July 1, 2021. [76] ¶ 68. John Cartlidge served as the hearing officer. *Id.* Two other CP employees, Arunas Ribikauskas, an engineer, and Christopher Mathews, a conductor, attended the meeting for allegedly failing to wear Covid masks. [76-7] at 6, 57, 63. Mathews, who periodically sat next to Plaintiff on the train, testified that he did not see Plaintiff sleeping. [76-7] at 65–66, 72. Defendant did not allow Plaintiff to present evidence concerning his "potential cause of sleeping while on duty." [79] ¶ 28. Coleman acknowledged he closed his eyes, but disputed that he was reclined and argued instead that he experienced "a medical nod." [71-4] Ex. GG at 73. Despite the footage, and his concession about the "medical nod," he testified he did not violate the sleeping rule. *Id.* at 77. On July 12, 2021, CP fired Plaintiff. [76] ¶ 72. Jason Ross, Vice President of Operations of the Southern Region, rendered the final decision, after a multi-level review process that went from John Cartlidge (the hearing officer) to Brian Scudds (labor relations) to Jason Ross. [71-5] at 21–25.

On October 8, 2021, the EEOC issued Plaintiff a notice of right to sue letter. [1-2] at 1. He filed this suit on January 3, 2022, alleging race and disability

6

discrimination and retaliation. *See* [1], [25]. Defendant seeks summary judgment in its favor on all claims, [69].

## II.    Motion for Summary Judgment

### A.    Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

### B.      Analysis

In moving for summary judgment, Defendant argues that: (1) Plaintiff cannot establish a *prima facie* case of race discrimination; (2) Plaintiff cannot demonstrate retaliation; and (3) Plaintiff cannot establish that Defendant failed to provide a reasonable accommodation. *See* [70].  The Court considers each argument in turn.

### 1.      Race Discrimination

Plaintiff claims that Defendant fired him because of his race.

Title VII prohibits an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To succeed on a Title VII discrimination claim, an employee must prove: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) causation.  *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)).

In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), the Seventh Circuit clarified the methods of proof in employment discrimination cases. The Court explicitly instructed district courts to consider the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765.  The holistic analysis set forth in *Ortiz* supplements, rather than alters, the burden-shifting framework for discrimination claims that the Supreme Court created in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 793 (1973).  *See*

*Davis v. Bd. Of Trs. Of Cmty Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (discussing *Ortiz*'s impact on methods of proof in employment discrimination cases). The question on summary judgment remains, "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *Id.* (citing *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)).

Courts now conduct the *McDonnell Douglas* analysis if the parties present arguments "in those terms," but also assess the plaintiff's evidence "cumulatively" under *Ortiz. See David*, 846 F.3d at 224. Here, the parties organize their arguments utilizing the *McDonnell Douglas* framework; therefore, the Court will assess the evidence in accordance with the *McDonnell Douglas* framework and determine whether Plaintiff has established a prima facie case of discrimination. The Court will additionally review the record holistically, asking whether it permits a reasonable factfinder to conclude that Defendant terminated Plaintiff based on his race. *See Ortiz*, 834 F.3d at 765.

*McDonnell Douglas* requires a plaintiff to state a prima facie case of discrimination by showing that: (1) he belongs to a protected class; (2) he performed reasonably on the job in accordance with the defendant's legitimate expectations; (3) despite his reasonable performance, he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class received more favorable treatment from the defendant. *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014), *overruled on other grounds by Ortiz*, 824 F.3d at 765. Once a plaintiff establishes a prima facie case, the burden shifts to the employer to offer "a

legitimate, non-discriminatory reason for the employee's termination." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). If the employer does so, the employer merits summary judgment "unless the plaintiff presents evidence that the proffered reasons are pretexts for discrimination." *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir. 1995).

Defendant twice terminated Plaintiff, an African American; there can thus be no question that Plaintiff belongs to a protected class or that Defendant subjected him to an adverse employment action. But Plaintiff's claim fails because he cannot prove that he was meeting CP's legitimate expectations and has not identified a single similarly situated employee that Defendant treated more favorably.

### a)    Legitimate Expectations

Defendant argues that Coleman was not meeting CP's legitimate expectations when CP dismissed Coleman in 2019 and 2021. [70] at 3. Plaintiff responds that since "the people judging" his "performance were the same people" he "accused of discriminating against" him, Coleman does not have to prove that he met CP's legitimate expectations; rather, the Court should consider this issue in the context of pretext. *Curry v. Menard, Inc.*, 270 F.3d 473, 477–78 (7th Cir. 2002) (first citing *Flores v. Preferred Technical Group,* 182 F.3d 512, 515 (7th Cir. 1999); and then citing *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 612 n.3 (7th Cir. 2001)).

The record sufficiently shows that though Doug Carl, who Plaintiff alleges discriminated against him, testified at the hearing that led to Plaintiff's 2019 termination, he was not the only one involved in evaluating Plaintiff's performance

and deciding his termination. *See* [76] ¶¶ 33, 36; [76-2] at 4. [79] at 40; [76] ¶ 28. The decision was made by a multi-level review involving several employees who considered the hearing, Plaintiff's history, and prior employment events. *See* [76] ¶ 48; [76-11] 29:7–25; [71-3] Exs. R, S, T; [76-11] at 38. Therefore, the individuals "judging" Plaintiff's performance, the people deciding his termination, and the factors considered in the decision did not entirely constitute "the same people" Plaintiff "accused against discriminating him." *See Curry*, 270 F.3d at 477–78. Accordingly, the principle articulated in *Curry* does not apply and Plaintiff must prove that he was meeting CP's legitimate expectations in order to prove his discrimination claim.

At the time of Plaintiff's 2019 termination, he had received 35 demerits and a 20-day suspension for job infractions, including failing to sound a proper whistle signal, reporting late to work, and taking other improper actions on the train. [71-2] at Ex. H. Additionally, Plaintiff had accepted responsibility for the break-in-two incident on April 19, 2019.[6] These infractions show that Plaintiff was not meeting CP's legitimate expectations in 2019, even before considering the October 9, 2019 break-in-two incident that directly led to Plaintiff's termination, and Plaintiff does not introduce any evidence to the contrary. Therefore, the undisputed evidence shows

---

[6] Plaintiff disputes his willingness to sign the waiver accepting responsibility, but the undisputed portions of the factual record confirm that Plaintiff did admit responsibility for the improper train handling.

11

that Plaintiff was not meeting CP's legitimate expectations at the time of his 2019 termination.

The parties dispute who made the decision regarding Plaintiff's 2021 termination. [75] at 10–11. Regardless of who made the final decision, however, Plaintiff does not claim that any of the alleged decisionmakers discriminated against him based upon his race. Again, Plaintiff must prove that he was meeting CP's legitimate expectations in order to prove his discrimination claim, and he cannot do so. *See Curry*, 270 F.3d at 477–78.

Plaintiff disputes that he fell asleep on the job prior to his 2021 termination, but he agrees that CP dismissed him for violating a rule, namely, sleeping while on duty. [76] ¶¶ 67, 72. Since CP had recently reinstated Plaintiff as an employee following his 2019 termination, [76] ¶ 56, Plaintiff's most recent employment history with CP included the demerits accumulated in 2018 and 2019 and associated unsatisfactory performance. Plaintiff has the burden to prove he met CP's legitimate expectations, but he fails to articulate any evidence that he met CP's legitimate expectations. *See* [75] at 10–11. Since a party waives undeveloped arguments, Plaintiff does not meet his burden as to this element of the *McDonnell Douglas* test. *See Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) ("A litigant 'waives an argument by failing to make it before the district court.' This rule applies when 'a party fails to develop arguments related to a discrete issue'") (first citing *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011); and then citing *Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005); *see also United States v. Useni*, 516 F.3d 634, 658

(7th Cir. 2008) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986)). Nor could Plaintiff meet his burden, as the only evidence in the record regarding Plaintiff's performance at the time of his 2021 termination consisted of Plaintiff's previous demerits and the fact that he was participating in refamiliarization trips. [76] ¶ 56.

Therefore, Plaintiff fails to prove this required element of the *McDonnell Douglas* test for both the 2019 and 2021 terminations.

### b)  Similarly Situated Employees

Even if Plaintiff could prove that he met CP's legitimate expectations at the time of his 2019 and 2021 terminations, he fails to identify a similarly situated employee as required by *McDonnell Douglas*. A similarly situated employee "must be directly comparable to the plaintiff in all material respects, which is a common-sense, flexible analysis of relevant factors." *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014). While the inquiry "is not a mechanical comparison, it requires enough common factors to determine if intentional discrimination was at play." *Id.*; *see also Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014) (stating the analysis does not require "near one-to-one mapping between employees"); *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007) (requiring "enough common factors" to allow for a "meaningful comparison"). For this meaningful comparison, a typical *McDonnell Douglas* plaintiff must show, at a minimum, that the comparators: "(1) dealt with the same supervisor, (2) were subject to the same

standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (internal citations omitted).

Plaintiff suggests several allegedly similarly situated employees, but his general assertions fail to allow a "meaningful comparison." For his 2019 termination and removal from service, Plaintiff points to the conductor involved in the incident, Mr. Olinski, seven individuals, and six black employees. [75] at 12. For each of these proposed comparators, however, Plaintiff fails to develop how each meets the requirements as a similarly situated employee.[7] Additionally, the record fails to support that these comparators qualify as similarly situated employees. Olinski, the conductor at the time of the break-in-two incident, had a different job, handled different responsibilities, and did not operate the throttle as Plaintiff did. *See* [71-1] Ex. C. While Plaintiff notes that Olinski was subject to the same rules as Plaintiff, Olinski was a conductor, and he thus had a different role in causing the break-in-two incident, and Plaintiff does not address this mitigating circumstance. Plaintiff further fails to note the identities or any material characteristics of the "seven individuals" and "six black employees" in his materials, and it "isn't the court's job to find the needle in the haystack, the truffle in the field, or the Waldo on the page." *Est. of Freese-Pettibon ex rel. O'Mealy v. Nexus RVs, LLC*, 701 F. Supp. 3d 757, 766 n.10 (N.D. Ind. 2023) (quoting *Litsinger v. Forest River, Inc.*, 536 F. Supp.3d 334, 353

---

[7] A party waives "perfunctory and undeveloped arguments that are unsupported by pertinent authority." *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004).

(N.D. Ind. 2021)). Plaintiff has the burden of identifying a similarly situated employee, and the information provided does not allow the Court to make a "meaningful comparison" for Plaintiff's race discrimination claim for the 2019 termination.

As to Plaintiff's 2021 termination, Plaintiff claims that "there are numerous employees who engaged in much worse conduct than Coleman, who were never terminated," but again he fails to expound on why these "numerous employees" are similarly situated for the purpose of the *McDonnell Douglas* framework. [75] at 13. Likewise, Plaintiff claims that he "was not afforded the same rules as his two crewmembers," *id.*, without acknowledging the "differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them," such as the different job titles, responsibilities, or infractions. *See Coleman*, 667 F.3d at 847. As noted above, a party waives an undeveloped argument, and a "court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Est. of Freese-Pettibon*, 701 F. Supp. 3d at 766 n.10 (quoting *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001)).

Consequently, Plaintiff again fails to meet his burden of identifying a similarly situated employee such that the Court can make a "meaningful comparison" as to his 2021 termination. *See Brown v. CACH, LLC*, 94 F.th 665, 667 (7th Cir. 2024) ("Summary judgment is the 'put up or shut up' time in litigation.") (quoting *Schacht v. Wisconsin Department of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999)). Without

a proper similarly situated employee for either termination, Plaintiff's claims fail under *McDonnell Douglas*.

### c) Consideration Under *Ortiz*

Plaintiff's claims also fail under *Ortiz*'s holistic approach. Under *Ortiz*, this Court must assess Plaintiff's evidence cumulatively and determine whether the record would permit "a reasonable factfinder to conclude" that his race "caused the discharge or other adverse employment action." 892 F.3d at 765; *David*, 846 F.3d at 224. This record, considered as a whole, does not permit such a conclusion.

The only individual at CP who Plaintiff alleges discriminated against him because of his race is Doug Carl, who testified at Plaintiff's 2019 hearing. Plaintiff claims that Defendant's decision to terminate him solely and discriminatorily relied upon Carl's testimony regarding the break-in-two incident. But the notion that Defendant discharged Plaintiff because of his race finds no support in the record.

First, Plaintiff's only evidence of race discrimination is his bare assertion that Carl did not like black people. Even assuming the truth of this conclusory statement, the record provides no suggestion that Carl's perceived dislike of black people played any part in Plaintiff's termination. Indeed, the record demonstrates conclusively that Carl did not make the decision to fire Plaintiff in 2019; rather, the termination occurred after a multi-level review and based upon several factors, including Plaintiff's employment performance history. Further, Plaintiff cannot show that white employees were treated differently for similar serious issues. *See* [76] ¶ 77.

16

Looking at the whole record, Plaintiff has offered no evidence to show that his 2019 termination occurred because of his race. *See Skiba*, 884 F.3d at 725 (noting that under *Ortiz*, at the "end of the day, the question is simply whether the same events would have transpired if plaintiff had been" a different race "and everything else had been the same") (internal citations omitted). Therefore, Plaintiff's claim relating to his 2019 termination fails under *Ortiz*.[8]

The Court thus grants summary judgment in favor of Defendant on Plaintiff's race discrimination claims, Counts I, II, and V.

### 2.    Retaliation

Defendant next seeks summary judgment on Plaintiff's retaliation claim. To survive summary judgment on a claim of retaliation under Title VII, Plaintiff must demonstrate evidence that allows the jury to conclude that "(1) that he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) there was a causal link between the two." *Porter v. City of Chicago*, 700 F.3d 944, 957 (7th Cir. 2012) (quoting *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 664 (7th Cir. 2011)).

Plaintiff claims five protected activities: (1) his participation in a 2008 lawsuit, (2) his deposition in a lawsuit against CP filed by someone else, (3) his discrimination report to Amanda Cobb and Joshua Bahruth in 2019, (4) his complaint with IDHR

---

[8] Likewise, Plaintiff fails to allege any racial animus in the 2021 termination. Carl was not involved in this situation, and Plaintiff's complaints regarding this termination have to do with non-racial issues—his medical accommodation request. Plaintiff simply provides no evidence to suggest that his race played a role in the 2021 termination, so the claim relating to the 2021 termination likewise fails under *Ortiz*.

after his first dismissal, and (5) his email to CP CEO Keith Creel claiming that Billingsley and Carl were conspiring to terminate him. Defendant does not challenge the first four areas as being protected activities, but argues that the fifth of these, the email to Creel, was not a protected activity because it was not a complaint of discrimination or harassment and did not mention race. [70] at 10 n. 4; [71] ¶ 28. The Court agrees: "merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Without more, Plaintiff's email to Creel does not constitute protected activity.

As to the other areas of protected activity, Plaintiff's retaliation claim fails. A showing of retaliation requires but-for cause. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action."). Therefore, to succeed on his retaliation claim, Plaintiff must present evidence sufficient to allow a jury to conclude that one or more of these protected activities constituted a but-for cause of his adverse employment actions.

Plaintiff has offered no such evidence. As to the 2008 lawsuit, which was eleven years before Plaintiff's first termination, Plaintiff has not provided evidence that Nicholas Walker, Jason Ross, or anyone else with a say in his terminations even knew about the lawsuit. So too the 2017 lawsuit, in which Coleman was not a party

but merely a deponent. [76-1] at 113:11–15 (Plaintiff could not name anyone at CP who knew of the deposition except Mr. Foreman, the plaintiff in that case). Plaintiff has also failed to allege that anything he specifically said in that deposition was damaging to CP. Jason Ross also stated in his declaration that he had never met Plaintiff and was unaware of his protected activities. [71-5] Ex. 15 ¶¶ 12, 13. Walker testified that he was not aware that Foreman had filed a lawsuit or that Plaintiff had been deposed in that lawsuit. [71-1] Ex. 2 34:8–17. The record offers no additional evidence that any decision-maker knew about the other protected activities.[9]

Without some evidence to allow a jury to find but-for cause, summary judgment in Defendant's favor is appropriate, and the Court thus grants Defendant's motion for summary judgment as to Plaintiff's retaliation claims, Counts III, IV, and VI.

### 3. Disability Discrimination

Defendant also moves for summary judgment on Plaintiff's disability discrimination claim, which asserts that Defendant failed to reasonably accommodate his sleep apnea, diabetes, and high blood pressure. To win on his claim, Plaintiff must show that: "(1) he is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *Bunn v. Khoury Enters.*, 753 F.3d 676, 682 (7th Cir. 2014) (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)).

---

[9] Plaintiff appears to dispute Defendant's claim that Walker had no knowledge of Plaintiff's complaint to Cobb, [76] ¶ 52, but Plaintiff's citation for this dispute describes how Cobb described Plaintiff's performance review with Walker. [76-10] 21:5–22:6. The record does not support the notion that Cobb told Walker about Plaintiff's protected activities.

Plaintiff alleges that Defendant failed to reasonably accommodate his sleep apnea by not telling him that he would be spending the night in Portage, Wisconsin on June 16, 2021, the night before he fell asleep on duty. [75] at 14–15. When Plaintiff returned to work in June 2021, he requested an accommodation regarding his disabilities, including his sleep apnea, since they "can flair up at anytime," and he needed "protection, to be able to go to the doctor or lay off to get it back in control." [76] ¶¶ 60, 61. No evidence suggests that Plaintiff's accommodation request ever related to his CPAP machine access or an inability to stay overnight on routes.

On June 16, 2021, Plaintiff's accommodation request remained in process. Plaintiff testified that, prior to the June 16th trip, he was told he would return the same day and thus he did not bring his CPAP machine. [76-1] at 213:10–22. Defendant indicates that Plaintiff should have known he would stay in a hotel that night because that was customary for the Bensenville-Portage route. [71] ¶ 68 n. 14. Even if Plaintiff was told that he would be cabbed back home, since Plaintiff's accommodation request did not concern his CPAP machine or overnight stays, Defendant was not responsible for assuring that Plaintiff brought his CPAP machine. Plaintiff offers no evidence that Defendant was aware that Plaintiff needed this accommodation, nor that Defendant was required to provide this accommodation.

The Court thus grants Defendant's motion for summary judgment as to the disability discrimination/reasonable accommodation claim, Count VII.

### III.   Conclusion

For the reasons explained above, this Court grants Defendant's motion for summary judgment [69] and directs the Clerk to enter judgment in favor of Defendant and against Plaintiff on all claims.  All dates and deadlines are stricken.  Civil case terminated.

Dated: February 12, 2026                Entered:

John Robert Blakey
United States District Judge